905 A.2d 438

Myra J. MARTIN, Appellant

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 5, 2005.

Decided Aug. 22, 2006.

430

John B. Mancke, Harrisburg, for Myra J. Martin.

Harold H. Cramer, Harrisburg, Terrance M. Edwards, Washington, DC, Andrew S. Gordon, Timothy Peter Wile, Harrisburg, for Bureau of Driver Licensing.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

This appeal arises from the suspension of appellant's operating privilege for refusing to undergo chemical testing pursuant to the Implied Consent Law, 75 Pa.C.S. § 1547. The lower courts disagreed over the authority of a municipal police officer to invoke the Implied Consent Law outside the officer's defined territorial jurisdiction, as provided in the Municipal Police Jurisdiction Act, 42 Pa.C.S. § 8951 *et seq.* ("MPJA" or "Act"). The trial court found that the officer lacked authority under the MPJA to pursue and arrest appellant in an adjoining jurisdiction; that the lack of authority rendered the officer's invocation of the Implied Consent Law invalid; and, thus, that appellant's operating privilege was not subject to suspension under the Implied Consent Law. A divided panel of the Commonwealth Court reversed, with the panel majority holding that the officer had acted within his MPJA authority in pursuing appellant into a neighboring jurisdiction, stopping her, and then invoking the Implied Consent Law. We agree with the trial court that the officer in the situation *sub judice* exceeded his authority under the Act and, therefore, we reverse the order below and reinstate the trial court's order invalidating appellant's license suspension.

The facts as found by the trial court, per the Honorable Edgar B. Bayley, are as follows: On November 27, 2003, at approximately 1:45 a.m., Hampden Township Police Officer James Sollenberger was on uniformed patrol in a marked Hampden police cruiser when he observed appellant's vehicle on Trindle Road in Hampden Township, Cumberland County. Believing appellant to be exceeding the posted 40 mile per hour speed limit, Officer Sollenberger followed her at a steady distance for approximately 100 yards, clocking her speed (by use of his own speedometer) at 53 miles per hour. Appellant then reduced her speed and, while still on Trindle Road,

entered the neighboring Borough of Camp Hill. Appellant properly signaled a right-hand turn and then made a wide right turn onto April Drive. There was no other traffic except the police cruiser on either Trindle Road or April Drive at the time and, at the point of appellant's turn, there were several large potholes on the right berm of Trindle Road and the right driving lane of April Drive.

As appellant continued in the right lane on April Drive, Officer Sollenberger, now in Camp Hill, turned onto April Drive and activated his patrol car's lights to initiate a traffic stop. Appellant stopped her car and got out. The officer exited his vehicle and asked appellant to get back inside her car, and she complied with his request. The officer then asked appellant to produce her driver's license, vehicle registration and proof of insurance, which she provided after some initial difficulty in locating the documents. During this exchange, Officer Sollenberger smelled an odor of alcohol coming from inside appellant's car and noted that appellant had red, bloodshot eyes and slurred her speech. The officer then requested that appellant exit her car; when she did, he detected the odor of alcohol coming from her person. Officer Sollenberger asked appellant to perform field sobriety tests, whereupon she swore at him and started walking toward a nearby house. The officer ordered appellant to stop, but she continued walking, causing him to physically seize appellant and arrest her for driving under the influence ("DUI").[1] He placed appellant in his patrol car and drove her to the booking center where he read to her instructions relevant to the Implied Consent Law from a DL–26 form.[2] Appellant refused to provide two valid breath test samples, which was deemed a refusal to submit to chemical testing.

On December 16, 2003, appellee Department of Transportation, Bureau of Driver Licensing (the "Bureau") informed

---

1. 75 Pa.C.S. § 3731(a). Section 3731 was subsequently repealed and reenacted as amended at Section 3802 of the Motor Vehicle Code, 75 Pa.C.S. § 3802. See Act of September 30, 2003, P.L. 120, No. 24, §§ 14, 16 (effective Feb. 1, 2004).

2. The DL–26 form is generated by the Bureau.

appellant that her operating privilege was being suspended for one year, as a result of her refusal to submit to chemical testing. Appellant filed a statutory appeal to the trial court challenging Officer Sollenberger's authority to enforce Section 1547 of the Motor Vehicle Code (commonly referred to as the Implied Consent Law), outside his territorial jurisdiction. The dispute arose from the statute's language regarding the role of a "police officer:"

> **(a) General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if **a police officer** has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
>
> (1) while under the influence of alcohol or a controlled substance or both. . . .

75 Pa.C.S. § 1547 (emphasis added).[3, 4] The Motor Vehicle Code defines a police officer as: "A natural person authorized by law to make arrests for violations of law." *Id.* § 102. This

---

3. Section 1547(a) was later amended by Act 24 of 2003, effective February 1, 2004. The prior version of the statute, set forth in the text, governs this case.

4. The Bureau's authority to suspend a driver's operating privilege based upon a refusal to submit to chemical testing derives from Section 1547(b) which, at the time relevant here, provided:

> (b) Suspension for refusal.—
> (1) If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
> (2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

75 Pa.C.S. § 1547(b). Section 1547(b) was later amended both by Act 24 of 2003, effective February 1, 2004, and Act 177 of 2004, effective November 29, 2004. The text above applies to this case, as the testing request pre-dated the amendments.

case centers on whether Officer Sollenberger was authorized to act as a police officer when he arrested appellant in a neighboring jurisdiction and requested that she submit to chemical testing under the Implied Consent Law.

The trial court sustained appellant's appeal and reversed her license suspension, finding that Officer Sollenberger lacked statutory authority to stop and arrest appellant outside the officer's territorial jurisdiction and, therefore, he was not then lawfully acting as a police officer for purposes of the Implied Consent Law. The court reasoned that, as a municipal police officer, Officer Sollenberger had authority beyond the territorial limits of his jurisdiction only in those instances specifically set forth in the MPJA. The MPJA, to the extent relevant to this appeal, defines a municipal police officer's extra-territorial jurisdiction as follows:

(a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

\* \* \* \*

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

\* \* \* \*

5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act

which presents an immediate clear and present danger to persons or property.

42 Pa.C.S. § 8953.

The trial court concluded that Officer Sollenberger's arrest of appellant was not an authorized extra-jurisdictional arrest under subsection (a)(2)'s hot pursuit provision because probable cause to arrest her did not arise while she was in the officer's primary jurisdiction of Hampden Township. This was so, the trial court reasoned, because the officer did not clock appellant's speed for a sufficient distance to generate probable cause to believe that she was speeding. Under the Motor Vehicle Code, an officer attempting to ascertain a motorist's speed using a speedometer (as opposed to, for example, a state police officer employing radar) must time the speed for at least three-tenths of a mile. *See* 75 Pa.C.S. § 3368(a). Here, Officer Sollenberger only clocked appellant's speed for 100 yards while still in Hampden Township.[5] The trial court further noted that appellant did not weave or cross into the lane of oncoming traffic in Hampden Township. Thus, Officer Sollenberger lacked probable cause to arrest appellant for any criminal acts or violations of the Motor Vehicle Code occurring in Hampden Township, a fact which negated any hot pursuit claim.

As to subsection (a)(5), the trial court noted that when appellant made a wide turn onto April Drive, she was already in the Borough of Camp Hill; that there were no other cars on the road; that there were potholes at the intersection of Trindle Road and April Drive (which explained appellant's wide turn); and that appellant immediately moved into the right traffic lane after executing the turn. From these facts, the trial court concluded that Officer Sollenberger did not witness or have probable cause to believe that appellant had committed a felony, misdemeanor, breach of the peace or other act which presented an immediate clear and present

---

**5.** A mile equals 1,760 yards; thus, pursuant to Section 3368(a), an officer timing a motorist's speed by use of a speedometer must follow the motorist for 528 yards, or more than five times the distance Officer Sollenberger followed appellant and clocked her speed.

danger to persons or property while he was in the Borough of Camp Hill. Thus, the trial court held that Officer Sollenberger lacked authority to arrest appellant since the officer was not a "police officer" for purposes of the Implied Consent Law. Therefore, appellant's operating privilege could not be suspended under the Law.

On the Bureau's appeal, a divided 2–1 panel of the Commonwealth Court reversed in a published opinion. *Martin v. Commonwealth, Department of Transportation, Bureau of Driver Licensing,* 870 A.2d 982 (Pa.Cmwlth.2005). Confining its analysis to the officer's authority under MPJA Section 8953(a)(5), the panel majority found that Officer Sollenberger was on official business both before and during his encounter with appellant, as he was on routine patrol in a marked police cruiser in his primary jurisdiction, he was in uniform, and he was clearly identifiable as a police officer. The majority concluded that, while in Hampden Township, the officer witnessed appellant commit a traffic offense, *i.e.,* speeding, noting that even if appellant could not be charged with speeding because the officer did not follow her for a sufficient statutory distance, the officer did clock her speed at a rate exceeding the posted speed limit. The majority further concluded that Officer Sollenberger witnessed a second traffic offense "on the geographical boundary [of Hampden Township and the Borough of Camp Hill] when [appellant] made a wide turn onto April Drive and crossed over the opposing lane." 870 A.2d at 986.[6] Based upon appellant's speeding and her wide turn, the

6. The majority's conclusion that the wide turn occurred on the boundary of the two jurisdictions differs from the trial court's finding that appellant entered the Borough of Camp Hill while still on Trindle Road and subsequently turned onto April Drive. Officer Sollenberger's testimony supports the trial court's finding. On direct examination, the officer testified that appellant crossed the border between Hampden Township and the Borough of Camp Hill only when she made a right turn onto April Drive. N.T. 5/26/04 at 8. The officer also stated that a portion of Trindle Road is also located in the Borough of Camp Hill. *Id.* at 8–9. On cross-examination, when shown certified street and zoning maps, the officer testified that a portion of Trindle Road prior to the intersection with April Drive indeed is in the Borough of Camp Hill, not in Hampden Township. *Id.* at 18. For purposes of appeal, we

majority concluded that: "[t]ogether, these acts of erratic driving presented an immediate clear and present danger to persons or property and further investigation was warranted." *Id.* The majority thus held that Officer Sollenberger had statutory authority to stop appellant and accordingly could invoke the Implied Consent Law.

President Judge Colins dissented. Citing *McKinley v. Department of Transportation, Bureau of Driver Licensing,* 576 Pa. 85, 838 A.2d 700 (2003) (*McKinley IV*), the dissent noted that limited jurisdiction police officers such as Officer Sollenberger lack the authority to implement the Implied Consent Law outside their own territorial boundaries in the absence of express statutory authority. In the dissent's view, Officer Sollenberger lacked statutory authority to arrest appellant because the conduct the officer witnessed in his own jurisdiction did not establish a speeding violation, since the officer did not clock appellant's vehicle for the requisite statutory distance, and the "other driving and conduct of [appellant] ... took place outside his primary jurisdiction, where he lacked authority to make an arrest." Therefore, the dissent concluded, appellant's refusal to submit to chemical testing was a "legal nullity" and the Implied Consent Law "does not apply." *Martin,* 870 A.2d at 988–89 (Colins, P.J., dissenting)

This Court granted allowance of appeal to consider: "Whether a municipal police officer has authority under the Municipal Police Jurisdiction Act, 42 Pa.C.S. § 8951 *et seq.,* to conduct an extraterritorial arrest of a motorist or implement the Implied Consent Law where the officer has no grounds for arrest or probable cause in the officer's own jurisdiction but grounds for arrest arise after the officer leaves his jurisdiction in pursuit of the motorist." *Martin v. Commonwealth, De-*

accept the trial court's finding, which is supported by the record, and not the unsupported Commonwealth Court finding.

Further, the majority did not identify the provision of the Motor Vehicle Code it believed was violated by appellant's wide turn. The Bureau argues that the Section implicated was 75 Pa.C.S. § 3301 ("driving on right side of roadway"), while the trial court analyzed Section 3309 ("driving on roadways laned for traffic"). The discrepancy is of no moment in our analysis.

*partment of Transportation, Bureau of Driver Licensing,* 584 Pa. 158, 882 A.2d 1001 (2005) (*per curiam* ).

■ The question for review focuses on the meaning and application of the MPJA and the Implied Consent Law. As the issue involves statutory construction, this Court's standard of review is plenary and non-deferential. *E.g. MCI World-Com, Inc. v. Pennsylvania Public Utility Comm'n,* 577 Pa. 294, 844 A.2d 1239 (2004); *Mosaica Academy Charter School v. Commonwealth, Department of Education,* 572 Pa. 191, 813 A.2d 813 (2002). The Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.,* provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. §§ 1903(a), 1921(b). The statute's plain language generally offers the best indication of legislative intent. *See, e.g., Commonwealth v. Gilmour Manufacturing Co.,* 573 Pa. 143, 822 A.2d 676, 679 (2003); *Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). We will resort to other considerations to discern legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(b). *See also Canvass of Absentee Ballots of November 4, 2003 General Election,* 577 Pa. 231, 843 A.2d 1223, 1230 (2004) (*citing O'Rourke v. Commonwealth, Dept. of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001)); *Ramich v. Workers' Compensation Appeal Bd. (Schatz Electric, Inc.),* 564 Pa.656, 770 A.2d 318, 322 (2001). Moreover, we note the requirement that statutes, and parts of statutes, which are in *pari materia* must be construed together. 1 Pa.C.S. § 1932(b)

Appellant claims that, as a municipal police officer employed in Hampden Township, Officer Sollenberger had legislatively limited authority to engage in extraterritorial police activity pursuant to the MPJA. Appellant then posits that this Court's decisions in *McKinley v. Department of Transportation, Bureau of Driver Licensing,* 564 Pa. 565, 769 A.2d 1153 (2001)

(*McKinley II* ) and *McKinley IV, supra,* require a conclusion that the extraterritorial stop here was not authorized by statute, and hence, the officer cannot be deemed to have been a police officer empowered to invoke the Implied Consent Law against her—a fact which, in turn, renders appellant's refusal to comply with that Law no basis for suspending her license. More specifically, appellant argues that in *McKinley II* this Court recognized that Section 8952 of the MPJA confines the general police powers of municipal officers to their primary jurisdictions, giving them general powers of arrest within the geographic boundaries of the municipality employing them. Municipal police officers' powers can be extended by Section 8953 to include certain limited activities outside their primary jurisdiction. However, appellant argues, *McKinley II* expressly recognized that any such extension is limited to those activities specifically enumerated in Section 8953.

In appellant's view, neither subsection 8953(a)(2) nor (a)(5) authorized Officer Sollenberger's extraterritorial actions. With respect to (a)(2)'s hot pursuit provision, appellant notes that the officer did not have probable cause to stop her in the officer's home jurisdiction, and thus, the officer's ensuing extra-territorial pursuit was "illegal." Under existing authority, appellant argues, it is clear that the hot pursuit provision only applies in instances where (1) the offense which would justify the pursuit occurred in the officer's primary jurisdiction, and (2) there was probable cause, and not merely reasonable suspicion, to believe that the offense occurred. Brief for Appellant, 19–20, *citing Commonwealth v. Firman,* 571 Pa. 610, 813 A.2d 643, 648 n. 8 (2002) (respecting primary jurisdiction) and *Commonwealth v. McCandless,* 538 Pa. 286, 648 A.2d 309, 311 (1994) (respecting probable cause requirement for hot pursuit).

With respect to (a)(5)'s "official business" exception, appellant makes two arguments. First, she echoes the trial court's view that appellant's "offense," as observed by Officer Sollenberger, did not present "an immediate clear and present danger to persons or property," and thus, the stop and arrest were unlawful. In addition, appellant argues, her conduct in

Camp Hill did not provide probable cause to stop and/or arrest her for a traffic offense. Brief for Appellant, at 20, 25–29 (*citing, inter alia, Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113 (1995)). Second and more fundamentally, appellant again cites to this Court's decision in *McCandless* and argues that an officer cannot be deemed to have been on "official business" in a neighboring jurisdiction if the only reason the officer is there is his pursuit of the defendant. Brief for Appellant, 22–23 (*citing McCandless*, 648 A.2d at 310–11).

Turning to remedy, appellant argues that, because the officer was not authorized to act extraterritorially under Section 8953, he does not meet the definition of a police officer for purposes of the Implied Consent Law. Therefore, the officer's chemical testing request was unlawful, and appellant's refusal to take the test cannot serve as a basis to suspend her license. In reaching a contrary conclusion, appellant concludes, the Commonwealth Court panel majority failed to appreciate the governing principles set forth in *McKinley II* and *McKinley IV*.

In response, the Bureau focuses only on subsection 8953(a)(5), as it concedes that, "as a matter of law," cases such as *Whitmyer, supra*, require a finding that Officer Sollenberger was not engaged in "hot" or "fresh" pursuit under 8953(a)(2), because he lacked probable cause to arrest while still within his primary jurisdiction. Brief for Appellee, 20–21 n. 4.[7] With respect to (a)(5), the Bureau recognizes that *McKinley IV* held that a limited jurisdiction police officer must have express statutory authority to make an extraterritorial arrest for DUI and, as an incident of that arrest, to request that the motorist submit to chemical testing under the Implied Consent Law. The Bureau argues, however, that subsection 8953(a)(5) empowered the officer to pursue and arrest appellant because he was on "official business" patrol-

---

7. The Bureau suggests that, based on his informal clocking of appellant's vehicle in Hampden Township, Officer Sollenberger did have reasonable suspicion to believe she was speeding when he pursued her into Camp Hill. *Id.*

ling within his jurisdiction when he first noticed appellant, who appeared to him to be exceeding the speed limit.[8] The Bureau asserts that Officer Sollenberger's observation of appellant's apparent speeding in Hampden Township justified his pursuit of her into Camp Hill. Notably, the Bureau does not address appellant's reliance upon *McCandless* concerning whether an officer in pursuit of a traffic offender (on less than probable cause) can be said to be on "official business" in a neighboring jurisdiction; it discusses that case only in a footnote, and only concerning a different point. *Id.* at 21 n. 4. Rather than address the question of "official business" in Camp Hill, the Bureau discusses probable cause, maintaining that, once in Camp Hill, Officer Sollenberger made a series of observations which generated probable cause to arrest for DUI. The Bureau then argues that the offense of DUI created "an immediate clear and present danger to persons and property," thus authorizing the officer to act pursuant to (a)(5).

 The MPJA defines the primary territorial jurisdiction of municipal police officers as: "The geographical area within the territorial limits of a municipality or any lawful combination of municipalities which employs a municipal police officer." 42 Pa.C.S. § 8951. Section 8952 then sets forth the powers of municipal police within this primary jurisdiction:

Any duly employed municipal police officer shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office anywhere within his primary jurisdiction as to:

(1) Any offense which the officer views or otherwise has probable cause to believe was committed within his jurisdiction.

(2) Any other event that occurs within his primary jurisdiction and which reasonably requires action on the part of the

---

8. Although the Bureau's "official business" argument emphasizes the officer's conduct upon first seeing appellant in his own primary jurisdiction, it cites to two cases where this Court recognized that officers on "routine patrol" were deemed to be on "official business" while operating **outside** their jurisdictions. *See* Brief for Appellee, 20–22 (*citing Commonwealth v. Pratti,* 530 Pa. 256, 608 A.2d 488 (1992) and *Commonwealth v. Merchant* (Pa.1991)).

police in order to preserve, protect or defend persons or property or to otherwise maintain the peace and dignity of this Commonwealth.

42 Pa.C.S. § 8952. Subsection 8953(a) of the Act then addresses extraterritorial police activity, authorizing municipal police to act outside their primary jurisdiction in " 'six specific instances.' " *Commonwealth v. Merchant*, 528 Pa. 161, 595 A.2d 1135, 1138 (1991), *quoting Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990).[9] The next subsection of the

9. Those six instances are as follows:
 **(a) General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
 (1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where the officer is otherwise acting pursuant to the requirements of the Pennsylvania Rules of Criminal Procedure, except that the service of an arrest or search warrant shall require the consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.
 (2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.
 (3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.
 (4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.
 (5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer

Act makes clear the legislative judgment that these extra-territorial authorizations are finite: "(b) Limitation.—Nothing contained in subsection (a) shall be deemed to extend or otherwise enlarge a municipal police officer's power and authority to arrest any person for an offense unless specifically authorized by law." *Id.* § 8953(b). *See generally McKinley II*, 769 A.2d at 1160 (Section 8952 confers upon municipal police general power of arrest within geographic area of their primary jurisdictions, while Section 8953 vests municipal police with extra-territorial arrest power which is "unconstrained by the employer-municipality's jurisdiction, but which is subject to legislatively defined limits directed to specific purposes.").

Subsections 8953(a)(2) and (a)(5) of the MPJA are in *pari materia*, and thus, must be construed together. 1 Pa.C.S. § 1932(b). However, in that construction, we must be mindful of that which we observed in *Merchant, i.e.,* that each of the six instances of extraterritorial authority delineated in Section 8953(a) "has its own rationale and justification for permitting police action outside their primary jurisdiction." In addition, after noting that the predecessor Act had authorized extraterritorial action in but one circumstance (hot pursuit), the *Merchant* Court explained that, "[t]he inclusion of additional instances of authorization indicates that the General Assembly intended to expand the powers of local police to protect the public, where such expansion would not adversely affect the ultimate goal of maintaining police accountability to local authority." 595 A.2d at 1138–39.

Applying the plain language of Section 8953(a), we conclude that Officer Sollenberger did not have statutory authority to act as a municipal police officer outside his primary jurisdiction in the factual situation presented in this case. As noted

and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

(6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

42 Pa.C.S. § 8953.

above, it is undisputed that the officer did not have probable cause to stop appellant in his own jurisdiction, and thus his extraterritorial conduct was not authorized as hot pursuit under subsection (a)(2) of the MPJA. Nor did the officer have extraterritorial authority under subsection (a)(5) because, we conclude, he was not on "official business" for purposes of that subsection when he pursued appellant into a neighboring jurisdiction.[10] On this point, appellant's reliance upon *McCandless* is apt and decisive.

Although *McCandless* involved a motion to suppress, and not a question of license suspension arising pursuant to the Implied Consent Law, the facts are markedly similar to those at bar here with respect to the extraterritorial authority of municipal police. The arresting officer in *McCandless* was on patrol in the City of Franklin early in the morning when he saw the appellant's station wagon, which appeared to be traveling much faster than other vehicles the officer had seen on that street. The officer followed the vehicle to determine if it was speeding. By the time the officer caught up with the vehicle, however, it had passed into the adjoining jurisdiction of Sandycreek Township. Once in Sandycreek, the officer followed the vehicle to clock its speed, doing so for one-half of a mile during which time the vehicle left Sandycreek and reentered Franklin. Two-thirds of the officer's clocking occurred in Sandycreek and one-third in Franklin. The clocking in Franklin was only for two-tenths of a mile, and thus was insufficient on its own to establish speeding in the officer's home jurisdiction because, as we have noted above, the Vehicle Code requires clocking for three-tenths of a mile when a determination is made via a speedometer. 75 Pa.C.S. § 3368(a). The officer stopped the vehicle and determined that the appellant was intoxicated.

10. Given our conclusion on this point, we need not, and therefore do not, address the additional arguments respecting subsection (a)(5), *i.e.,* whether Officer Sollenberger's observations in Camp Hill generated probable case, and whether, if so, the offense involved a breach of the peace which presented an immediate clear and present danger to persons or property.

The trial court granted the appellant's motion to suppress various statements as well as blood test results, finding that the officer lacked probable cause to believe appellant was speeding at the point the officer entered Sandycreek, and thus, the officer had no cause to pursue the appellant. The Superior Court reversed, holding that the officer's belief that the appellant was traveling faster than other vehicles allowed the officer to proceed into the neighboring jurisdiction to investigate. On further appeal, this Court reversed, holding that the officer's observations in his home jurisdiction were insufficient to establish probable cause, and thus, the extraterritorial pursuit was not lawful under subsection 8953(a)(2). Notably, for purposes of the case *sub judice*, this Court also summarily rejected the Commonwealth's suggestion—a suggestion which was premised upon *Commonwealth v. Pratti* and *Commonwealth v. Merchant*, the same two cases the Bureau cites on the question of "official business"—that the officer's extraterritorial conduct was warranted under subsection (a)(5):

> It has been suggested by the Commonwealth that the officer's entry into Sandycreek Township might have been justified on another basis, to wit, that he was there on "official business" separate and apart from his pursuit of appellant. *See Commonwealth v. Pratti*, 530 Pa. 256, 608 A.2d 488 (1992); *Commonwealth v. Merchant*, 528 Pa. 161, 595 A.2d 1135 (1991); 42 Pa.C.S. § 8953(a)(5) (permitting police officers to exercise authority in neighboring municipalities when they are there on "official business"). We find no basis in the record, however, to conclude that the officer entered Sandycreek Township for any purpose other than to determine whether appellant was speeding. This being the case, probable cause to believe that an offense had been committed in the City of Franklin was necessary to justify the officer's pursuit of appellant into the neighboring township.

648 A.2d at 311.

Here, as in *McCandless*, the officer's entry into the adjoining jurisdiction of Camp Hill was for no official business

"separate and apart" from his "hot pursuit" of appellant in order to determine if she was speeding. Officer Sollenberger was not in Camp Hill .on other official business when he noticed appellant, nor was he there as part of his routine patrol—for example, a routine, brief entry to allow him to turn around to re-enter his primary jurisdiction [11]—or for any other purpose. The officer entered Camp Hill only to investigate his suspicion that appellant was speeding. Indeed, to overlook the true reason for the officer's entry, and deem the activity lawful under a different subsection of the MPJA, would ignore that each of the six instances of extraterritorial authority recognized in Section 8953(a) "has its own rationale and justification for permitting police action outside their primary jurisdiction." *Merchant,* 595 A.2d at 1138–39. Thus, we hold, the officer's conduct in the case *sub judice* was not authorized by subsection (a)(5). Because Officer Sollenberger's conduct in pursuing and arresting appellant was without statutory authorization, he lacked the authority to implement the Implied Consent Law. *McKinley IV, supra.*

■ We are mindful that the cost of enforcing the plain language of the limited extraterritorial authorization established in Section 8953(a) is that some violators will escape the consequences of their conduct. However, we reiterate that which we stated in *McKinley IV:*

> Limited jurisdiction police personnel are not entirely without recourse outside of their territorial boundaries. Nothing in our decisions prevents them from summoning the appropriate law enforcement officials, and exercising any lawful means to assist in the identification of law violators.

---

11. This fact distinguishes both *Pratti* and *Merchant,* as we recognized in *McCandless. Accord Commonwealth v. Lehman,* 582 Pa. 200, 870 A.2d 818, 821 (2005) ("Considering the present case as well as *Pratti* and *Merchant,* we are led to the following rule: section 8953(a)(5) of the MPJA authorizes an extrajurisdictional detention where the detaining officer is on-duty, outside his or her jurisdiction for a routine or customary reason including responding to an exigent circumstance, develops probable cause to believe an offense has been committed, and limits out-of-jurisdiction activities to maintaining the *status quo,* including detaining the suspect, until officers from the appropriate jurisdiction arrive.").

Nevertheless, as the Legislature has circumscribed their police authority, we hold that they lack the ability to act as police officers in implementation of the Implied Consent Law outside territorial boundaries, in the absence of an express, legislative grant of extraterritorial authority.

838 A.2d at 706.

In addition to briefing the question specified in this Court's grant of allocatur, the Bureau argues two other issues. First, the Bureau argues that, even if Officer Sollenberger's extra-territorial pursuit and arrest of appellant for DUI was deemed illegal, her remedy is limited to the criminal suppression court because the illegality of the arrest is irrelevant to the propriety of her license suspension under the Implied Consent Law. According to the Bureau, this Court's decision in *McKinley IV* "did not change" an alleged "longstanding rule" that an illegal arrest for DUI does not affect the Bureau's ability to suspend a license for failing to comply with the arresting officer's request under the Implied Consent Law. Second, the Bureau argues that Officer Sollenberger had reasonable grounds to believe that appellant was operating and in actual physical control of the movement of her vehicle while under the influence of alcohol. As these issues were not encompassed in this Court's order granting review, ordinarily we would not discuss them. However, because the Bureau prevailed below, if either issue would require affirmance here (or a remand for consideration of the point below), the Bureau should not be denied the benefit of a meritorious alternative argument. Ultimately, we conclude that neither argument is persuasive.

With respect to the Bureau's first argument, the question of the appropriate remedy in a license suspension appeal, where the challenge is to the arresting officer's authority under the Implied Consent Law, was a specific subject of this Court's remand order in *McKinley II*, 769 A.2d at 1163–64 & n. 18, and the Bureau's present argument (which was accepted by the Commonwealth Court majority upon the remand in [*McKinley v. Dept. of Transportation, Bureau of Driver Licensing*, 793 A.2d 996, 1002–03 (Pa.Cmwlth.2002) (*McKinley III* )) ] was squarely rejected in the subsequent appeal to this

Court in *McKinley IV*, where we reversed the Commonwealth Court. *McKinley IV* carefully addressed and assessed the competing positions set forth in the Commonwealth Court majority and dissenting positions in *McKinley III* on the question of remedy, and we made clear that we found the dissenting position "to be the better one." 838 A.2d at 704. Our mandate in *McKinley IV* was equally unambiguous, as we reversed the Commonwealth Court and reinstated the trial court order invalidating the license suspension. The Bureau's present attempt to cast as unsettled, and then relitigate, a question squarely resolved against it in *McKinley IV* must fail.

The Bureau's second argument is also easily disposed of. Since we have concluded that Officer Sollenberger was not on "official business" when he pursued appellant into a neighboring jurisdiction, and our reversal is based upon that fact, the Bureau could not prevail even if this argument were accepted.

Accordingly, the decision of the Commonwealth Court is reversed, and the trial court's order invalidating the license suspension under review is reinstated.

Justices CAPPY, SAYLOR and BAER join the opinion.

Former Justice NIGRO did not participate in the consideration or decision of this case.

Justice EAKIN files a concurring opinion in which Justice NEWMAN joins.

## CONCURRING OPINION

Justice EAKIN.

Since the issue of whether Officer Sollenberger had probable cause to believe appellant was speeding in his jurisdiction was not before this Court, I join the majority's decision to reverse the Commonwealth Court's order. *See Martin v. Commonwealth, Department of Transportation, Bureau of Driver Licensing*, 584 Pa. 158, 882 A.2d 1001, 1002 (2005) (allocatur granted on issue of "[W]hether a municipal police

officer has authority under ... 42 Pa.C.S. § 8951 *et seq.,* to conduct an extraterritorial arrest of a motorist or implement the Implied Consent Law where the officer has no grounds for arrest or probable cause in the officer's own jurisdiction but grounds for arrest arise after the officer leaves his jurisdiction in pursuit of the motorist.").

I write separately to note, in my view, Officer Sollenberger had probable cause to believe appellant was speeding in his jurisdiction. He testified he saw appellant traveling at a high rate of speed in his jurisdiction; he followed appellant for a steady distance in his jurisdiction, where he clocked appellant with his speedometer as traveling at 53 miles-per-hour in a 40 mile-per-hour speed limit zone. N.T. Trial Court Hearing, 5/26/04, at 22–23. There may have ultimately been insufficient evidence to convict appellant for speeding since Officer Sollenberger did not determine her speed on his speedometer for three-tenths of a mile. *See* 75 Pa.C.S. § 3368(a); *Commonwealth v. Cohen,* 413 Pa.Super. 460, 605 A.2d 814, 817 (1992). However, "an actual violation of the [Motor Vehicle Code] need not ultimately be established to validate a vehicle stop, a police officer must have a reasonable and articulable belief that a vehicle or driver is in violation of the [Code] in order to lawfully stop the vehicle." *Commonwealth v. Snell,* 811 A.2d 581, 584 (Pa.Super.2002).[1]

The question is not whether the officer could *prove* a case of speeding; validity of a stop is never evaluated by the ultimate conviction or acquittal. Of course appellant was exceeding the posted limit—the officer clocked her, and thus had articulable and reasonable belief in the violation. Officer Sollenberger possessed probable cause to believe appellant was speeding in his jurisdiction; thus, he could have continued pursuit and

---

1. Effective February 1, 2004, the General Assembly *"lowered* the quantum of cause an officer must possess from 'articulable and reasonable grounds' [which is equivalent to probable cause] to 'reasonable suspicion'" to conduct a vehicle stop. 75 Pa.C.S. § 6308(b); *Commonwealth v. Cook,* 865 A.2d 869, 873 n. 1 (Pa.Super.2004) (emphasis in original).

stopped appellant's vehicle outside his jurisdiction. *See* 42 Pa.C.S. § 8953(a)(2).

NEWMAN joins this concurring opinion.