**Corey S. WEEMS**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 31, 2009.

Decided March 17, 2010.

after they have been delivered pursuant to this rule as at any previous stage."

Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

Edward F. Spreha, Jr., Harrisburg, for appellee.

BEFORE: McGINLEY, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Dauphin County (trial court) which sustained the appeal of Corey S. Weems (Weems) from an eighteen-month suspension of his operating privileges for refusal to submit to chemical testing, pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i). We reverse.

On April 19, 2008, Weems was charged with Driving Under the Influence of Alcohol or Controlled Substance (DUI) in violation of Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802. The Department notified Weems by letter dated April 30, 2008, that his operating privileges would be suspended for eighteen months as a result of his refusal to submit to chemical testing on April 19, 2008, in violation of Section 1547 of the Vehicle Code. On May 30, 2008, Weems filed a timely appeal to the trial court.

On July 16, 2008, the trial court held a *de novo* hearing. The Department presented the testimony of Officer Brant Ma-

ley of the Penbrook Borough Police Department (Officer Maley). Officer Maley testified that on April 19, 2008, he affected a traffic stop of Weems' vehicle after observing it traveling at about 50 miles-per-hour in a properly posted 25 mile-per-hour zone and failing "to stop at a red turn". Reproduced Record (R.R.) at 18a. Officer Maley testified that he "detected an odor of alcoholic beverage coming from [Weems'] breath" and that Weems told him that he had only had one drink starting at 8:00 p.m. that evening. R.R. at 19a. Thereafter, Officer Maley requested Weems to perform a series of field sobriety tests, which he consented to perform. Officer Maley determined that Weems failed the sobriety tests. Officer Maley then placed Weems under arrest for driving under the influence, put him in his patrol car and transported him to the Dauphin County booking center in Harrisburg. Once at the booking center, Officer Maley read the Implied Consent warnings to Weems from the DL–26 form and gave Weems the opportunity to read the form to himself. Thereafter, Weems signed the DL–26 form and advised Officer Maley that "he was going to refuse to take the breath test." R.R. at 21a.

On cross, Officer Maley agreed that about a quarter-of-a-mile after he began following Weems' vehicle, he entered another jurisdiction, Susquehanna Township. Officer Maley stated that he had not been able to "clock" Weems' vehicle in order to cite him for speeding; that he was of the opinion that Weems was traveling at a speed higher than posted and determined that there could be a problem with Weems operating a motor vehicle safely. Officer Maley charged Weems with violating 75 Pa.C.S. § 3361 (relating to driving a vehicle at a safe speed).[1]

The trial court interjected that the issue before it regarded the Municipal Police Jurisdiction Act, 42 Pa.C.S. § 8953 (relating to statewide municipal police jurisdiction)(MPJA). The Department argued that under the MPJA, Officer Maley properly followed Weems' vehicle into Susquehanna Township and affected an arrest for DUI, because he had observed a traffic violation in his own jurisdiction of Penbrook, that is, driving a vehicle at an unsafe speed, approximately fifty miles-per-hour in a 25 mile-per-hour zone.

The trial court asked for the disposition of the Section 3361 violation and was informed that it was still pending before the trial court. The trial court then asked counsel for Weems his position on whether Officer Maley would have jurisdiction pursuant to the MPJA if the purpose of his exceeding his boundaries was to issue the citation for violating Section 3361. Weems' attorney responded that he would agree with the trial court's analysis under 42 Pa.C.S. § 8953(a)(2) (hot and fresh pursuit). The trial court continued the matter until the underlying charges were adjudicated.

On May 6, 2009, the trial court reconvened the hearing. The trial court was

1. 75 Pa.C.S. § 3361, entitled "Driving vehicle at safe speed" provides as follows:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

advised that Weems pled guilty to disorderly conduct and a violation of 75 Pa.C.S. § 3111 (relating to obedience to traffic-control devices). R.R. at 45a–46a. Weems did not enter a plea regarding the 75 Pa.C.S. § 3361, unsafe speed charge. R.R. at 47a.

Officer Maley was recalled and testified regarding his observation of Weems' vehicle the night in question. Officer Maley stated that he estimated Weems to be traveling at about 50 miles-per-hour in a 25 mile-per-hour zone; that his estimate was based upon nine years of service and doing a lot of focus traffic enforcement. Officer Maley stated that he has "clocked like tens of thousands of cars with speed timing equipment through my career. I have—that's a good estimate of what the travelling public is doing. . . . I estimate that I am plus or minus two or three miles per hour on my guesses most of the time. I am sometimes right on, pretty close." R.R. at 50a–51a. Officer Maley, when questioned by the trial court judge, stated that he followed Weems' vehicle in order to stop him for driving at an unsafe speed. R.R. at 58a. Officer Maley further stated that he had "reasonable suspicion to stop him at that time. . . ." *Id.*

The trial court sustained Weems' statutory appeal. The trial court stated that it sustained Weems' appeal because Officer Maley testified that he had a "reasonable suspicion" that Weems had violated 75 Pa. C.S. § 3361 while he was within Officer Maley's primary jurisdiction, and the MPJA required that he have "probable cause" to believe that Weems had violated Section 3361. The Department now appeals to this court.[2]

On appeal, the Department contends that the trial court erred as a matter of law in holding that Officer Maley, the arresting police officer, did not have the authority to affect an extraterritorial arrest of licensee, Weems, under the MPJA for violating Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802 (driving under the influence).

▉ To sustain a license suspension under Section 1547(b) of the Vehicle Code, the Department must demonstrate that the licensee: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to chemical testing; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his operating privileges. *Carlin v. Department of Transportation, Bureau of Driver Licensing,* 739 A.2d 656 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 563 Pa. 678, 759 A.2d 924 (2000).[3] If the Department is able to sus-

---

**2.** Our review is limited to determining whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an error of law or violated constitutional rights. *Dardozzi v. Department of Transportation, Bureau of Driver Licensing,* 660 A.2d 205 (Pa.Cmwlth.1995).

**3.** Section 1547 of the Vehicle Code, 75 Pa. C.S. § 1547, provides in pertinent part as follows:

(a) General rule.—Any person who drives, operates or is in actual control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section . . . 3802 (relating to driving under the influence of alcohol or controlled substance). . . .

\* \* \*

(b) Suspension for refusal.—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but

tain its burden, the burden then shifts to the licensee to prove that he was physically unable to take the test or that he was incapable of making a knowing and conscious refusal. *Department of Transportation, Bureau of Driver Licensing v. Wilhelm*, 156 Pa.Cmwlth. 24, 626 A.2d 660 (1993).

The Department satisfied this burden through the testimony of Officer Maley, together with the admission of Weems' prior chemical test refusal under Section 3802 of the Vehicle Code.

■ Thus, the sole issue before this court is whether Officer Maley possessed the statutory authority to effect an arrest of Weems for DUI in the neighboring jurisdiction.[4] Section 8953 of the MPJA provides in pertinent part as follows:

> (a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth

or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

\*     \*     \*

> (2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has **probable cause** to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S. § 8953. (emphasis added).

Officer Maley testified that he had a "reasonable suspicion" that Weems had violated 75 Pa.C.S. § 3361 (relating to driving a vehicle at a safe speed) while within the Officer's jurisdiction. The trial court concluded that Officer Maley possessed a "reasonable suspicion" that Weems had violated 75 Pa.C.S. § 3361 while in Penbrook Borough.[5]

---

upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

\*     \*     \*

(ii) For a period of 18 months if any of the following apply:
(A) The person's operating privileges have previously been suspended under this subsection.
(B) The person has, prior to the refusal under this paragraph, been sentenced for:
(I) an offense under section 3802 . . . .

4. We note that *Martin v. Department of Transportation, Bureau of Driver Licensing*, 588 Pa. 429, 905 A.2d 438 (2006), does not apply in this matter, as the Department admitted in *Martin* that the arresting officer did not have probable cause prior to leaving his jurisdiction in pursuit of Martin. The Supreme Court stated in *Martin* that it granted allowance of appeal to consider "[w]hether a municipal police officer has authority under the . . . [MPJA] . . . to conduct an extraterritorial arrest of a motorist or implement the Implied

Consent Law where the officer has no grounds for arrest or probable cause in the officer's own jurisdiction but grounds for arrest arise after the officer leaves his jurisdiction in pursuit of the motorist." *Id.* at 437, 905 A.2d at 442 (citation omitted). In the present controversy, the argument is whether probable cause existed prior to Officer Maley leaving his jurisdiction in pursuit of Weems.

5. In order to effect a valid traffic stop in his own jurisdiction, Officer Maley must show that he had a "reasonable suspicion" that a violation occurred pursuant to 75 Pa.C.S. § 6308 which provides in pertinent part as follows:

§ 6308. Investigation by police officers

\*     \*     \*

(b) Authority of police officer.—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has **reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal,

Under the MPJA, Officer Maley is required to have "probable cause" that Weems violated 75 Pa.C.S. § 3361 while still within Penbrook Borough in order to follow Weems into Susquehanna Township and effect an arrest. The Department submits that the trial court erred and abused its discretion in determining that no probable cause existed merely because Officer Maley testified that he had a reasonable suspicion. The Department maintains that the trial court should have examined further into the facts in order to determine whether the Officer did, in fact, possess the requisite "probable cause" to believe that Weems had violated 75 Pa. C.S. § 3361 while still within Penbrook Borough.

In *Commonwealth v. Stroud*, 699 A.2d 1305, 1308 (Pa.Super.1997), "probable cause" was defined in pertinent part as follows:

probable cause does not deal with certainties,—"probable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely inference...." Finally, as this Court has recently noted, the totality of the circumstances must be viewed as seen through the eyes of an experienced, trained police officer since, "when evaluating the totality of circumstances comprising reasonable suspicion or probable cause, [a reviewing court] will not ignore the ability of experienced police officers to draw deductions and inferences which other persons might not make ...." (citations omitted).

Officer Maley testified that he had a "reasonable suspicion" that Weems had violated 75 Pa.C.S. § 3361 (driving at a safe speed). "The basic element of driving ... [a vehicle at a safe speed, in violation of 75 Pa.C.S. § 3361] is speed: 1. speed greater than reasonable and prudent under the conditions; 2. speed without regard to the hazards then existing; and 3. speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead." *Heller v. Department of Transportation, Bureau of Driver Licensing*, 867 A.2d 735, 741 (Pa.Cmwlth.), *rev'd on other grounds*, 584 Pa. 131, 882 A.2d 461 (2005). While we acknowledge that personal estimates of speed do not amount to probable cause, *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113 (1995), the Officer did not rely solely on Weems' excessive speed in pulling him over, but upon the conditions of the roadway as well.[6]

Officer Maley testified that he believed Weems was driving at about twice the posted speed limit, 50 miles-per-hour in a 25 mile-per-hour zone. Officer Maley did not clock Weems. However, based upon his nine years of experience clocking "tens of thousands of cars with speed timing equipment", he estimated the vehicles

for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title. (Emphasis added).

Formerly, a police officer was required to have "articulable and reasonable grounds to suspect a violation of this title [Title 75 (relating to vehicles)]" in order to effect a legal stop. *Former* 75 Pa.C.S. § 6308(b). "Articulable and reasonable grounds" has been construed as equivalent to "probable cause." *Commonwealth v. Gleason*, 567 Pa. 111, 122, 785 A.2d 983, 988 (2001). Currently, 75 Pa. C.S. § 6308(b) provides that an officer need only have a "reasonable suspicion that a violation of this title is occurring or has occurred." Thus, had the offense occurred in Penbrook, Officer Maley's stop of Weems would have been proper.

**6.** We note that an officer need not prove that a specific, high performance, car would not be able to stop on a dime in order to show the driver was driving too fast for conditions.

speed at 50 miles-per-hour. Officer Maley stated that his estimates are usually "plus or minus two or three miles per hour".[7] R.R. at 51 a. Officer Maley further testified that the area was primarily residential and "probably our second most highly used pedestrian route," which lacked sidewalks. R.R. at 49a. Officer Maley testified that in addition to Weems' excessive speeding, Weems' vehicle was approaching the intersection of Market Street Road and Boas Street where "you crest over the hill and down the other side into Union Deposit Road, where it then turns into a four lane highway." R.R. at 49a.

In *Commonwealth v. Heberling*, 451 Pa.Super. 119, 678 A.2d 794 (1996), the Superior Court determined that where a police officer saw Heberling traveling at a high rate of speed in a 45 mile-per-hour zone and Heberling was nearing an intersection and the crest of a hill, a citation for violating Section 3361 of the Vehicle Code was proper, even if the weather conditions were clear, no other traffic was affected and no pedestrians were at risk. The Superior Court stated in pertinent part as follows:

> The second sentence of *section* 3361 begins with the phrase *"consistent with the foregoing"* and sets forth several specific examples of conditions and hazards that further define when the general conduct—unreasonable or imprudent speed—constitutes a violation. These situations include, but are not limited to, approaching a hill crest and approaching an intersection. These specifically enumerated situations are not the exclusive or sole situations that, together with inappropriate speed, might constitute vio-

lations, because there is a catchall category, i.e., "when special hazards exist with respect to pedestrians *or* other traffic *or* by reason of weather or highway conditions."

> There is no question that speeding alone does not constitute a violation of this section. There must be proof of speed that is unreasonable or imprudent under the circumstances (of which there must also be proof), which are the "conditions" and "actual and potential hazards then existing" of the roadway. These circumstances may include not only the amount of traffic, pedestrian travel and weather conditions, but also the nature of the roadway itself (e.g., whether four-lane, interstate, or rural; flat and wide, or narrow and winding over hilly terrain; smooth-surfaced, or full of potholes; clear, or under construction with abrupt lane shifts.) It is these circumstances under which one's speed may be found sufficiently unreasonable and imprudent to constitute a violation of *section* 3361, even if the driver has adhered to the posted speed limit.

> \* \* \*

> "Approaching a hill crest" and "approaching ... an intersection" are "conditions" specifically enumerated in the statute that require a driver to proceed at a safe and appropriate speed. When appellant drove at an excessive speed under these conditions, she violated section 3361.

*Heberling*, 678 A.2d at 795–797 (emphasis in original).

---

7. *See Commonwealth v. Ulman*, 902 A.2d 514, 519 (Pa.Super.2006), *appeal denied*, 591 Pa. 672, 916 A.2d 1102 (2007) (the arresting officer was determined to be entitled to draw reasonable inferences from the facts in light of his twelve years of experience. Based upon his experience and the facts as he perceived them, he reasonably concluded that violations of the Vehicle Code were being committed. Thus, his pursuit and stop of Mr. Ulman's vehicle was properly based upon reasonable suspicion).

Officer Maley's testimony that the road was a high pedestrian area, that there were no sidewalks, that Weems was approaching a hill crest and an intersection, that he estimated Weems to be traveling at twice the speed limit and that he believed Weems was not operating his motor vehicle safely, was enough to show that Officer Maley had probable cause to believe Weems was driving at an unsafe speed in violation of 75 Pa.C.S. § 3361, while within the Officer's primary jurisdiction. "[P]otential danger is sufficient to establish probable cause and warrant a traffic stop under the former, stricter standard." *Commonwealth v. Perry,* 982 A.2d 1009 (Pa.Super.2009), citing *Commonwealth v. Minnich,* 874 A.2d 1234 (Pa.Super.), *appeal denied,* 584 Pa. 706, 885 A.2d 41 (2005). Thus, as Officer Maley had probable cause and was in hot pursuit of Weems, as previously discussed, pursuant to 42 Pa.C.S. § 8953(a)(2) of the MPJA, Officer Maley's arrest of Weems for driving under the influence was proper.

Accordingly, we must reverse the decision of the trial court.

### ORDER

AND NOW, this 17th day of March, 2010 the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is reversed. The suspension of Corey S. Weems' operating privilege pursuant to 75 Pa.C.S. § 1547(b)(1)(i) is reinstated.