COMMONWEALTH of Pennsylvania, Appellant

v.

Jamey S. HENRY, Appellee.

Superior Court of Pennsylvania.

Submitted Jan. 14, 2008.
Filed Feb. 19, 2008.

James R. Hopson, Asst. Dist. Atty., for Com., appellant.

Ronald C. Makoski, Greensburg, for appellee.

BEFORE: PANELLA, SHOGAN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 The Commonwealth appeals as of right from the August 1, 2007, Order granting Jamey S. Henry's omnibus pretrial suppression motion.[1]

¶ 2 On the early morning of October 5, 2006, a South Greensburg police officer assigned to his routine patrol was driving in a northerly direction on Spruce Street. Record, No. 1, Affidavit of Probable Cause. As the officer approached the intersection of Spruce and Bridge streets he noticed a car driving in an easterly direction on Bridge Street run a stop sign, drive through an intersection, and continue on its way. The officer initiated a traffic stop approximately one-eighth (⅛) of a mile east of the intersection. This intersection is located in Hempfield Township, which is outside of the officer's primary jurisdiction. The officer approached the vehicle and, when he got near the driver, noticed a strong stench of alcohol. The officer instructed appellee to exit the vehicle. Appellee stumbled while doing so and subsequently, failed a breathalyzer test and a series of field tests. He was placed into custody.

---

1. The Commonwealth brings this appeal as of right pursuant to Pennsylvania Rule of Appellate Procedure 311, **Interlocutory Appeals as of Right, (d) Commonwealth appeals in criminal cases.** *See e.g., Commonwealth v. Jones,* 826 A.2d 900, 904 (Pa.Super.2003) *(en banc).*

¶ 3 On January 9, 2007, the Westmoreland County District Attorney filed a criminal information charging appellee with driving under the influence of alcohol [2] and failure to stop.[3] Thereafter, appellee filed an omnibus pre-trial motion seeking suppression of the evidence and alleging, in relevant part, the South Greensburg police did not have the requisite jurisdiction over the intersection of Spruce and Bridge streets necessary to effectuate an arrest. Record, No. 4.

¶ 4 The suppression court conducted a hearing in the matter on June 12, 2007. On August 1, 2007, the trial court issued the Order *sub judice* with an accompanying Opinion concluding the South Greensburg police department did not have jurisdiction over the intersection of Spruce and Bridge streets pursuant to the Municipal Police Jurisdiction Act (MPJA).[4] The trial court further concluded the exclusionary rule applied and that the evidence obtained should be suppressed. A timely notice of appeal followed.

¶ 5 The Commonwealth raises two issues for our consideration:

> I. Did the suppression court err in finding the prosecuting police officer violated the Municipal Police Jurisdiction Act in stopping [appellee] for a traffic violation outside his primary jurisdiction and then arresting [appellee] for driving under the influence of alcohol?

> II. If the prosecuting officer did violate the Municipal Police Jurisdiction Act in stopping [appellee] for a traffic violation and arresting [appellee] for driving under the influence of alcohol, did the suppression court err in granting suppression as a remedy?

Commonwealth brief at 4 (emphasis removed).

¶ 6 When reviewing an Order granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. *Commonwealth v. Mistler,* 590 Pa. 390, 912 A.2d 1265, 1268 (2006), *citing Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980). In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. *Id.* at 1268–1269. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. *Id.* at 1269, *citing Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 842 (2003). Our scope of review over the suppression court's legal conclusions, however, is plenary. *Id., citing Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 881 (1998).

¶ 7 The provision of MPJA directly at issue in this case reads as follows:

> (a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

> > (5) Where the officer is on official business and views an offense, or has

---

**2.** 75 Pa.C.S.A. § 3802(a)(1).

**3.** *Id.* at § 3323(b).

**4.** 42 Pa.C.S.A. § 8951, *et. seq.*

probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S.A. § 8953, **Statewide municipal police jurisdiction,** (a)(5) **General rule.**

¶ 8 The Commonwealth first argues the officer who arrested appellee "was permitted to detain [appellee] when he viewed him failing to stop for the stop sign outside his primary jurisdiction because the area was part of his regular patrol route and he witnessed the Defendant commit a traffic violation." Commonwealth brief at 9. Conversely, appellee argues the arresting officer was not authorized to pursue him under section 8953(a)(5) because he observed appellee committing a summary offense and not a "a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property" as contemplated by the statute.

¶ 9 Our Supreme Court recently decided *Martin v. DOT, Bureau of Driver Licensing,* 588 Pa. 429, 905 A.2d 438 (2006), which provides some guidance in this matter. In *Martin,* a police officer was on routine patrol in his own jurisdiction when he observed a motorist driving at what the officer suspected to be a high rate of speed. *Id.* at 439. The officer followed the motorist for approximately 100 yards while clocking the motorist's speed with his speedometer. *Id.* The officer continued to follow the motorist into an adjoining jurisdiction, where he observed the motorist take a wide right hand turn. *Id.* Notably, no other traffic was on the roadway while these events were unfolding. *Id.* After the motorist took the right hand turn, she parked her vehicle outside of her home and exited. *Id.* The officer turned on his lights and initiated a stop. *Id.* When the motorist exited the vehicle, it was apparent to the officer that she had been driving under the influence of alcohol. *Id.* The officer then placed the motorist under arrest. *Id.*

¶ 10 The Supreme Court granted *allocatur* to consider an issue which is similar to the one presented in this appeal: "Whether a municipal police officer has authority under the [MPJA] to conduct an extraterritorial arrest of a motorist or implement the Implied Consent Law where the officer has no grounds for arrest or probable cause in the officer's own jurisdiction but grounds for arrest arise after the officer leaves his jurisdiction in pursuit of the motorist." *Martin, supra* at 437–438, citing *Martin v. DOT, Bureau of Driver Licensing,* 584 Pa. 158, 882 A.2d 1001 (2005) *(per curiam).* After extensive analysis, the *Martin* Court concluded the officer had violated the MPJA when he pursued the motorist into the adjoining jurisdiction on the suspicion of speeding because he did not have probable cause to suspect a crime had been committed in his own jurisdiction. *Id.* at 447. The Court noted the officer was not in the adjoining jurisdiction on "official business," such as a routine incursion into another jurisdiction to turn around to return to his regular patrol route, but, rather, had entered the adjoining jurisdiction solely for the purpose of investigating his suspicion that the motorist was speeding. *Id.* at 447–448; *cf. Commonwealth v. Lehman,* 582 Pa. 200, 870 A.2d 818, 821 (2005) ("[W]e are led to the following rule: section 8953(a)(5) of the MPJA authorizes an extrajurisdictional detention where the detaining officer is on-duty, outside his or her jurisdiction for a routine customary reason including responding to an exigent circumstance, develops probable cause to

believe an offense has been committed, and limits out-of-jurisdiction activities to maintaining the *status quo,* including detaining the suspect, until officers from the appropriate jurisdiction arrive.") (emphasis in original); *cf. also Commonwealth v. Eisenfelder,* 444 Pa.Super. 435, 664 A.2d 151, 152 (1995)

¶ 11 While the arresting officer in this matter was on "official business," he was on official business in his own jurisdiction—not in the Pennsylvania State Police's jurisdiction. N.T., 6/12/07, Omnibus Pre–Trial Motions Proceedings, at 14. The officer had probable cause to believe appellee had committed a traffic violation by running a stop sign in the Pennsylvania State Police's jurisdiction—not his own. *See contra* 42 Pa.C.S.A. § 8953(a)(2) (granting officers the ability to act extraterritorially when in hot pursuit of a person the officer has probable cause to believe committed an offense in the *officer's* jurisdiction). The arresting officer conceded during cross-examination that he pursued appellee into the Pennsylvania State Police's jurisdiction solely because he suspected appellee had violated the Motor Vehicle Code—not because he suspected appellee was driving under the influence or committing any other "felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property" within the meaning of section 8953(a)(5).[5] N.T. at 15.

¶ 12 To complicate matters further, the arresting officer also failed to follow the appropriate procedure for conducting a proper extraterritorial detention. In *Lehman,* our Supreme Court made it clear

that a proper extraterritorial detention is limited to "maintaining the *status quo,* including detaining the suspect, until officers from the appropriate jurisdiction arrive." *Id.* at 821 (emphasis in original); *see also Eisenfelder, supra* at 153. The arresting officer conceded during cross-examination that he never called the Pennsylvania State Police after detaining appellee and also testified that he handled the arrest and booking process without State Police assistance. N.T. at 16.

¶ 13 There is no question the arresting officer violated section 8953(a)(5). There is, however, a significant question as to whether application of the exclusionary rule is the appropriate remedy for the officer's violation. *See* Commonwealth brief at 11. In addressing this question, we are mindful the MPJA must be liberally construed to effectuate the purposes of the Act, which include providing police with the authority to act in a law enforcement capacity outside their own jurisdictions under limited circumstances. *Lehman, supra* at 820, *citing Commonwealth v. Merchant,* 528 Pa. 161, 595 A.2d 1135, 1138 (1991). The intent behind the MPJA is to promote public safety while maintaining police accountability; the Act was not intended to be used to erect "impenetrable jurisdictional walls benefiting only criminals hidden in their shadows." *Id., quoting Merchant, supra* at 1139.

¶ 14 Two conflicting positions have arisen in this Court on the question as to whether a violation of the MPJA entitles an aggrieved party to suppression under the exclusionary rule. In *Commonwealth v. Bradley,* 724 A.2d 351 (Pa.Super.1999)

---

5. The trial court found no indication within the record that any other vehicles were in the vicinity when appellee was stopped. Trial Court Opinion, Blahovec, J., at 4. This fact forecloses the possibility that appellee's running of the stop sign could be considered an

"act which presents an immediate clear and present danger to persons or property." 42 Pa.C.S.A. § 8953, **Statewide municipal police jurisdiction,** (a)(5) **General rule;** *see Martin v. DOT, Bureau of Driver Licensing,* 588 Pa. 429, 905 A.2d 438, 439 (2006).

*(en banc)*, this Court noted the exclusionary rule applies to any evidence gathered subsequent to an MPJA violation "even if the officer acts in good faith or the police officer's actions would have been lawful if performed within the proper jurisdictional limits." *Id.* at 354, *citing Commonwealth v. Brandt*, 456 Pa.Super. 717, 691 A.2d 934, 939 (1997), *appeal denied* 549 Pa. 695, 700 A.2d 437 (1997).

■ ¶ 15 In *Commonwealth v. Chernosky*, 874 A.2d 123 (Pa.Super.2005) *(en banc)*, *appeal denied* 588 Pa. 747, 902 A.2d 1238 (2006), this Court implicitly rejected the absolutist approach espoused in *Bradley* in favor of the case-by-case approach approved of by our Supreme Court in *Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023 (1990). The factors to be considered in applying this case-by-case approach consist of "all the circumstances of the case including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the [MPJA], and the prejudice to the accused." *Chernosky*, *supra* at 130, *quoting O'Shea*, *supra* at 1030. The *Chernosky* Court further noted that the spirit, or purpose of, the MPJA "is to proscribe investigatory, extraterritorial forays used to acquire additional evidence where probable cause does not yet exist." *Id.* at 130, *citing Commonwealth v. Laird*, 797 A.2d 995, 999 (Pa.Super.2002).

¶ 16 *Chernosky* unquestionably sets forth the proper standard this Court is to employ in determining whether the exclusionary rule should act to suppress evidence obtained pursuant to an MPJA violation. *Chernosky* relies on an approach approved by our Supreme Court, is more recent than the decision rendered in *Bradley*, and sets forth a standard which allows this Commonwealth's courts to tailor a remedy in situations where police intentionally have overstepped their boundaries while still affording our courts the flexibility to deny suppression when police have acted to uphold the rule of law in good faith but are in technical violation of the MPJA. *See also Commonwealth v. Peters*, 915 A.2d 1213, 1222 n. 2. (Pa.Super.2007), *appeal granted* — Pa. —, 938 A.2d 988 *(per curiam* 12/21/07).

■ ¶ 17 Turning to the facts of the matter at hand, the arresting officer in this case entered the Pennsylvania State Police's jurisdiction after determining he had probable cause to stop appellee for violating the Motor Vehicle Code. If appellee had run the stop sign while traffic was heavy, the officer would have arguably been authorized by section 8953(a)(5) to enter the State Police's jurisdiction. 42 Pa.C.S.A. 8953(a)(5) (providing that extraterritorial pursuit is warranted when, *inter alia,* an officer has probable cause to believe a suspect has committed any "act which presents an immediate clear and present danger to persons or property."). The stop sign appellee ran was within the officer's ordinary patrol route, although the sign was located outside the officer's jurisdiction. N.T. at 9, 12. Indeed, if the officer had been present in the intersection at the point in time when appellee ran the stop sign, he would have been on "official business" in the State Police's jurisdiction and would have been authorized to pursue appellee until detention. *Lehman, supra* at 821.

¶ 18 While there is no question the officer failed to follow the appropriate procedure after detaining appellee, there is no indication within the record this failure was volitional. Furthermore, this failure did not prejudice appellee in that it was presumably immaterial to him as to whether he was detained by a South Greensburg Police officer or a Pennsylvania State Police trooper—the end result would have been identical.

¶ 19 In conclusion, the arresting officer did not enter the State Police's jurisdiction to conduct an extraterritorial patrol or to embark on a fishing expedition in hopes of gathering more evidence to reach a determination of probable cause. *Chernosky, supra* at 130; *cf. Martin, supra* at 447–448. To the contrary, the officer was on routine patrol in his own jurisdiction when he determined he had probable cause to initiate a traffic stop. The officer was in technical violation of the MPJA; however, this violation was unintentional and, when viewed in light of all the circumstances, does not warrant the application of the exclusionary rule. The suppression court's ruling "impose[s] an unreasonable burden on the police and endow[s] the criminal with an incredible advantage." *Eisenfelder, supra* at 154. Accordingly, the suppression court's Order is reversed.

¶ 20 Order reversed; case remanded for proceedings consistent with this Opinion.

¶ 21 Jurisdiction relinquished.