## Commonwealth v. Beeker

486

C.P. of Lawrence County, No. 193 of 2013, C.R.

*Jessica L. Barson*, for Commonwealth.
*Dennis A. Elisco*, for defendant.

PICCIONE, *J.*, January 22, 2014—Before the court for disposition is the omnibus pretrial motion filed on behalf of the defendant, James J. Beeker (hereinafter, the "defendant"). Pursuant to the information filed on March 21, 2013, the defendant is chàrged with DUI: General impairment pursuant to 75 Pa.C.S.A. § 3802(a)(1), DUI: Highest Rate of Alcohol (BAC .16+) pursuant to 75 Pa.C.S.A. § 3802(c), and Restrictions on Alcohol Beverages pursuant to 75 Pa.C.S.A. § 3809(a). The defendant's omnibus pretrial motion consists of a motion to suppress and a motion for writ of habeas corpus (hereinafter, the "writ"). The defendant alleges that all evidence obtained as a result of the events occurring on December 17, 2012 should be suppressed as it was obtained in violation of his constitutional rights. Additionally, the defendant argues that the Commonwealth of Pennsylvania (hereinafter, the "Commonwealth") has failed to produce sufficient evidence to establish a *prima facie* face of the above offenses and asks this court to dismiss the charges against him.

The charges in this case arise from events occurring on December 17, 2012. On that date Officer Michael Lynch (hereinafter, "Officer Lynch") of the Shenango Township Police Department received a dispatch for a complaint of harassment, fighting, and an argument on Harmony-Baptist Road. While driving with Officer David Lough, also of the Shenango Township Police Department, Officer Lynch received information regarding the man about whom the individual complained and a description and license plate of the vehicle. The dispatcher informed Officer Lynch that James Beeker would be operating a

small, tan, four-door silver Toyota sedan driving north on Ellwood Road towards the City of New Castle.

After Officer Lynch received the dispatch, he located a vehicle he believed closely matched the description of the vehicle relayed to him by dispatch. This vehicle was tan in color, but Officer Lynch believed the vehicle could be the same that dispatch described because it was dark outside. At this time Officer Lynch was driving south on Ellwood Road, next to Shenango High School, and the vehicle was driving north on Ellwood Road. Officer Lynch turned around and began to follow that vehicle. Officer Lynch notified dispatch of this vehicle's location and suggested that dispatch notify the New Castle Police Department as well. Officer Lynch observed the vehicle turn onto Frank Avenue then pull into a driveway and turn his headlights off. With the intent to travel into Shenango Township, Officer Lynch turned his vehicle around in the parking lot of the Veteran of Foreign Wars building, which is located entirely within the jurisdiction of the City of New Castle. While in the parking lot, Officer Lynch saw the vehicle, with its headlights turned off, pull out of the driveway then begin "creeping" north, toward the City of New Castle. Officer Lynch then got behind the vehicle, activated his lights and initiated traffic stop at the corner of East Washington Street and Vogan Street. Although the intersection of East Washington Street and Vogan Street is in close proximity to Shenango Township, the traffic stop was effectuated entirely within the jurisdiction of the City of New Castle.

Upon approaching the vehicle, Officer Lynch recognized that the defendant was driving the vehicle. Officer Lynch observed that the defendant had bloodshot, glassy, watery eyes, and he smelled a strong odor of an alcohol beverage

emanating from inside the car. Additionally, Officer Lynch observed an open bottle of beer on the seat. At that point, Officer Lynch asked the defendant to exit his vehicle so Officer Lynch could administer field sobriety tests. After Officer Lynch initially engaged the defendant and began to administer the field sobriety tests, Sergeant Shawn Lough (hereinafter, "Sergeant Lough") of the New Castle Police Department arrived at the scene. Sergeant Lough was the New Castle Police officer in charge on this night, and he stood next to Officer Lynch as Officer Lynch administered the field sobriety tests.

Officer Lynch first administered the alphabet test, which the defendant passed. Next, Officer Lynch administered the one-leg stand and nine-step walk and turn tests. The defendant failed both tests. Officer Lynch believed the defendant showed signs of impairment. Officer Lynch then asked the defendant if he would submit to a portable breath test. The defendant agreed, and he tested positive for alcohol. At that point, Officer Lynch placed the defendant under arrest for the suspicion of driving under the influence, and he drove the defendant to the Ellwood City Hospital in order to have the defendant submit to a blood test. The blood test was performed, and the lab results showed the defendant's blood alcohol content was .235. As a result, the defendant was charged with the above criminal charges.

As a result of the defendant's arrest on December 17, 2012, a preliminary hearing was held before Magisterial District Judge Jennifer Nicholson on February 21, 2013. The testimony of which is reiterated above. Thereafter, the defendant filed the instant omnibus pretrial motion on May 13, 2013, and a hearing was held in this court on November 5, 2013 on the matter. During this hearing

Sergeant Lough testified on the Commonwealth's behalf. Sergeant Lough testified that he received a be-on-the-lookout, or BOLO, originating from the Shengango Township Police Department that a small vehicle was traveling toward the City of New Castle. Sergeant Lough then received information that Officer Lynch stopped the vehicle on East Washington Street, New Castle. When Sergeant Lough arrived at the location, Officer Lynch had already begun to effectuate the traffic stop.

The defendant argues in the omnibus pretrial motion that Officer Lynch did not have sufficient probable cause or reasonable suspicion to effectuate a traffic stop. Moreover, the defendant argues that Officer Lynch did not have the authority to stop the defendant's vehicle in the City of New Castle and not his primary jurisdiction, Shenango Township. The defendant argues that the rights guaranteed to him under the Commonwealth and United States' Constitutions were violated and all evidence obtained should be suppressed. Furthermore, the defendant argues that since all evidence seized as a result of the illegal search must be suppressed, the Commonwealth is unable to present sufficient evidence to maintain a prima facie case against the defendant and all charges should be dismissed.

Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Lindblom*, 854 A.2d 604, 605 (Pa. Super. 2004). At the conclusion of the hearing, the suppression court judge shall enter findings of fact and conclusions of law as to whether the evidence was lawfully obtained. Pennsylvania Rules of Criminal Procedure Rule 581(I). "It is within the suppression court's sole province as

factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003). The suppression court judge is entitled to believe all, part, or none of the evidence presented. *Commonwealth v. Snell*, 811 A.2d 581, 584 (Pa. Super. 2002).

According to the testimony of Officer Lynch, the entire traffic stop of the defendant occurred within the jurisdiction of the City of New Castle. Officer Lynch observed the vehicle while he was in Shenango Township, but he turned around in the City of New Castle and effectuated the traffic stop entirely within the jurisdiction of the City of New Castle. The Municipal Police Jurisdiction Act (hereinafter, the "MPJA") authorizes municipal police officers to enforce the laws of this Commonwealth outside their primary jurisdiction under certain circumstances.42 Pa.C.S.A. § 8953. The MPJA provides, in relevant part, the following:

(a) General rule. — Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

(1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where the officer is otherwise acting pursuant to the requirements of the Pennsylvania

Rules of Criminal Procedure, except that the service of an arrest or search warrant shall require the consent of the chief law enforcement officer, or a person authorized by them to give consent, or the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S.A. § 8953(a) (1), (2), and (5)[1]. The Pennsylvania "Supreme Court has noted that MPJA must be construed liberally to achieve one of its purposes, which is to provide police with the authority to act outside their jurisdictions under the circumstances enumerated in that act." *Comm. v. Chernosky*, 874 A.2d 123, 129 (Pa. Super. 2005). Moreover, the intent of the MPJA "is to promote public safety while maintaining police accountability[.]" *Comm. v. Henry*, 943 A.2d 967, 971 (Pa. Super. 2008).

---

1. The MPJA proscribes for extrajurisdictional authority in three additional circumstances; however, this court will analyze the two subsections that are conceivably applicable to the instant case.

The Commonwealth argues that officer Lynch's actions were justified by the above-cited subsections of the MPJA. First, as applied to subsection (1), the Commonwealth argues that Officer Lynch was acting within the requirements of the Rules of Civil Procedure. The Pennsylvania Supreme Court has also provided guidance in analyzing situations analogous to those of the instant case. In *Martin v. DOT, Bureau of Driving Licensing*, 905 A.2d 438 (Pa. 2006), the Supreme Court considered the issue of whether an officer may make an extrajurisdictional arrest of a driver when the officer had no probable cause to stop the driver in his own jurisdiction but obtained probable cause after leaving his jurisdiction in pursuit of the driver under the suspicion of speeding. *Id.* at 447. The Supreme Court decided that the officer may not do so; and the officer violated the MPJA because he entered the adjacent jurisdiction solely to investigate whether the driver committed a violation of the Motor Vehicle Code. *Id.* at 447-448.

In the instant case, the testimony provides that the defendant entered onto a public roadway at night without activating his lights, which is a violation of the Motor Vehicle Code.[2] Officer Lynch observed the vehicle the defendant was operating "creeping" onto a roadway in the jurisdiction of the City of New Castle. Officer Lynch observed this violation only when he turned around and began to follow the defendant's vehicle within the neighboring jurisdiction. At that time Officer Lynch was not on his regular routing patrol. He was inside the neighboring jurisdiction and was then taking action solely for the purpose of investigating whether the defendant

---

2. This would constitute a violation of 75 Pa.C.S.A. § 4302(a)(1).

was the operator of the vehicle, or he could obtain further information about the vehicle. Just as the court in *Martin* found, these actions are in violation of the MPJA. Officer Lynch did not have sufficient probable cause to stop the defendant's vehicle in his own jurisdiction, and he may not follow a vehicle into a neighboring jurisdiction in order to obtain the requisite level of suspicion necessary to stop the vehicle. Furthermore, although Sergeant Lough gave Officer Lynch the authority to continue the traffic stop and field sobriety tests, Officer Lynch did not have proper justification prior to stopping the defendant's vehicle to conduct a vehicle stop, rendering Sergeant Lough's authorization inconsequential. Therefore, Officer Lynch was not justified to act pursuant to the authority in subsection (1).

Subsection (2) authorizes a municipal police officer to arrest a defendant outside his jurisdiction if the officer was in hot and fresh pursuit of the defendant whom the officer had probable cause to believe committed a crime within his jurisdiction. 42 Pa.C.S.A. § 8953(a)(2). The Superior Court in *Comm. v. McPeak*, 708 A.2d 1263, 1266 (Pa. Super. 1998), clarified that "the hot and fresh pursuit requirement for this MPJA exception necessitates a finding that the officers met the immediate, continuous, and uninterrupted standard...as well as the additional requirement of some sort of chase." Instantly, Officer Lynch testified at the preliminary hearing that no "chase" was involved; rather, Officer Lynch testified that after the defendant backed his vehicle from the driveway and began to "creep" north, Officer Lynch then initiated the traffic stop. It appears that only seconds elapsed from when Officer Lynch turned on his lights to when the defendant stopped his vehicle. The defendant did not attempt to increase his speed or

elude Officer Lynch. Following the defendant's vehicle over such a short interval without incident does not meet the description of a chase, whether "hot" or "fresh" as contemplated by the MPJA. As a result, Officer Lynch's actions were not authorized under subsection (2).

Finally, subsection (5) permits an officer to arrest a defendant outside his primary jurisdiction where "the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed." 42 Pa.C.S.A. § 8953(a)(5). Upon review of the instant facts, Officer Lynch was neither on official business nor did he have probable cause to believe that an offense has been committed. As a result, Officer Lynch did not have the statutory authority to act.

The Supreme Court in *Comm. v. Lehman*, 870 A.2d 818 (Pa. 2005), considered the meaning of "official business" within the terms of subsection (5). In Lehman, the officer "was on-duty inside his jurisdiction when a citizen reported a car parked less than a mile away whose driver was slumped over and may have needed medical assistance." *Id.* at 821. The Supreme Court stated that the officer had a duty to respond and report to the potential exigency. *Id.* Due to the circumstances of that case, the court found the officer did not violate the MPJA and provided the following procedure by which to abide when an officer is acting pursuant to authority under the MPJA: the MPJA "authorizes an extrajurisdictional detention where the detaining officer is on-duty, outside his or her jurisdiction for a routine or customary reason...develops probable cause to believe an offense has been committed, and limits out-of-jurisdiction activities to maintaining the *status quo*, including detaining the suspect, until officers from the appropriate jurisdiction arrive." *Id.*

In the instant case, as stated above, Officer Lynch did not possess the requisite probable cause to believe a crime had been committed to justify stopping the defendant's vehicle outside his primary jurisdiction. The only information upon which Officer Lynch was acting was the description of the vehicle as relayed by dispatch: a tan, four-door Toyota sedan traveling north. This information vaguely described what could be the plurality of vehicles traveling on a roadway at any given time. The defendant's vehicle nearly matched the description provided by dispatch with the exception of its color. This information alone is insufficient to support a finding of probable cause in Officer Lynch's primary jurisdiction. When Officer Lynch spotted a car he believed matched the description, he followed the vehicle in an attempt to obtain more information. As the Supreme Court found in *Martin*, "an officer cannot be deemed to have been on 'official business' in a neighboring jurisdiction if the only reason the officer is there is his pursuit of the defendant." 905 A.2d at 440. Furthermore, Officer Lynch did not observe any erratic driving or any behavior of the defendant nor did he receive any information to suggest that the defendant was operating his vehicle while intoxicated that would give rise to an immediate clear and present danger to people or property within the meaning of subsection (5). As a result, Officer Lynch was not in compliance with subsection (5) when he left his primary jurisdiction to follow the defendant's vehicle. Based upon the foregoing, the court finds that Officer Lynch was not in compliance with the MPJA and without the statutory authority to stop the defendant outside his primary jurisdiction.

Having thus found, the court must consider whether the application of the exclusionary rule is an appropriate

remedy given the nature of the violation. As stated above, the MPJA must be liberally construed to effectuate the purpose thereof. *Chernosky*, 874 A.2d. at 129. Pennsylvania courts may "tailor a remedy in situations where police intentionally have overstepped their boundaries while still affording our courts the flexibility to deny suppression when police have acted to uphold the rule of law in good faith but are in technical violation of the MPJA." *Comm. v. Henry*, 943 A.2d 967, 972 (Pa. Super. 2008). Consequently, the exclusionary rule is not uniformly applied to cases in which an officer violates the MPJA. *Id.* The exclusionary rule should be applied when an officer "engaged in an extrajurisdictional fishing expedition [or] attempt[ed] to expand his sphere of power." *Lehman*, 870 A.2d at 821. In deciding whether to suppress evidence obtained in violation of the MPJA, the Supreme Court of Pennsylvania provided that such determination must be made on a case-by-case approach. *Comm. v. O'Shea*, 567 A.2d 1023 (Pa. 2006). Such circumstances to consider are the following: "all the circumstances of the case including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the [MPJA], and the prejudice to the accused." *Chernosky*, 874 A.2d at 130.

In the case *sub judice*, Officer Lynch was on "official duty" when he spotted the vehicle that he believed matched the description he received via dispatch. However, he entered the jurisdiction of the City of New Castle without having probable cause to stop the vehicle in his own jurisdiction. Rather, Officer Lynch entered the jurisdiction of the City of New Castle on a fishing expedition in hopes of gathering more evidence to reach a determination of probable cause, namely, to substantiate or disprove the complainant's allegations. Moreover, there is no question

that Officer Lynch failed to follow the appropriate procedure for conducting an extrajurisdictional detention. As held in *Lehman*, an officer is permitted to detain a suspect until officers from the appropriate jurisdiction arrive. 870 A.2d at 821. Officer Lynch testified that he handled the filed sobriety tests on his own. He also drove the defendant to the hospital on his own and ultimately arrested the defendant independently of the proper authority of the jurisdiction.

Sergeant Lough testified that he eventually arrived on the scene when Officer Lynch was already conducting field sobriety tests; however, his mere presence does not convert the arrest of the Shenango Township Police to one of the New Castle Police. Sergeant Lough testified that he was merely present and took no part in any stage of the arrest. Sergeant Lough did testify that he authorized Officer Lynch to continue; however, such authorization occurred after Officer Lynch stopped the vehicle and effectuated at least some field sobriety tests. As stated above, since Officer Lynch did not possess the requisite authority to conduct a traffic stop, Sergeant Lough's authorization is inconsequential.

Moreover, Officer Lynch testified that he did not contact the New Castle Police but told dispatch that since the vehicle was traveling north, the New Castle Police should be notified. No testimony was presented to show that Officer Lynch knew that the New Castle Police were arriving at the scene; instead, the testimony suggests that Officer Lynch stopped the defendant's vehicle and administered the field sobriety tests under the assumption that he had the authority to do so without the intervention from the proper jurisdictional authority. Based upon these actions, it appears that Officer Lynch's pursuit of the

defendant into a neighboring jurisdiction was volitional with no indication that he intended to comply with the MPJA.

As stated above, the intent of the MPJA "is to promote public safety while maintaining police accountability[.]" *Henry*, 943 A.2d 971. No testimony or evidence was presented to suggest that the defendant was a danger to the public safety. There was also no testimony regarding other vehicles driving on the roadway or any movements by the defendant's vehicle that would constitute erratic driving, which may be indicative of a danger to public safety. Therefore, excluding the evidence obtained against the defendant would further the purpose of the MPJA; officers must maintain their accountability to local authority. As a result, the exclusionary rule is a proper remedy under the circumstances of this case, and the evidence obtained against the defendant must be suppressed.

Based upon the foregoing, the defendant's omnibus pretrial motion is hereby granted and all evidence obtained as a result of the events occurring on December 17, 2012 must be suppressed.[3]

## ORDER OF COURT

And now, this 22nd day of January, 2014, this matter being before the court on November 10, 2013 regarding defendant's omnibus pretrial motion, with Assistant District Attorney Jessica L. Barson, Esquire, appearing and representing the Commonwealth, and with Dennis A. Elisco, Esquire, appearing and representing the defendant,

---

3. Because the evidence obtained as a result of the MPJA violation must be suppressed and the charges against the defendant dismissed, this court will not address the allegations contained in the defendant's motion for writ of habeas corpus as this motion is now moot.

and after a complete review of the record, the court hereby orders and decrees as follows:

1. Defendant's omnibus pretrial motion is hereby granted pursuant to the attached opinion.

2. All charges as contained in the information filed at the above case number are hereby dismissed.

3. The clerk of courts shall properly serve notice of this order and attached opinion upon counsel of record; and if a party has no counsel, then upon said party at their last known address as contained in the court's file.