2024 PA Super 222

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN G. EAKIN | : | No. 1113 WDA 2021 |

Appeal from the Order Entered September 8, 2021
In the Court of Common Pleas of Venango County Criminal Division at
No(s):  CP-61-CR-0000647-2017

BEFORE:  LAZARUS, P.J., BOWES, J., DUBOW, J., NICHOLS, J., MURRAY, J.,
McLAUGHLIN, J., KING, J., SULLIVAN, J., and BECK, J.

OPINION BY BOWES, J.:                    **FILED:  September 25, 2024**

The Commonwealth of Pennsylvania appeals from the order granting Steven G. Eakin's suppression motion.  The trial court granted the motion on the basis that the traffic stop was conducted by an officer operating outside of his primary jurisdiction, and his actions were not authorized by the Intergovernmental Cooperation Act ("ICA") or the Municipal Police Jurisdiction Act ("MPJA").  Since we conclude that suppression was not an appropriate remedy for the technical violations in this case, we reverse and remand for further proceedings.

Prior to reciting the undisputed facts of this case, we begin by briefly setting forth the framework within which Chief Edward Sharp of the Polk Borough Police Department encountered Appellee in Frenchcreek Township. In 2006, Polk Borough and Frenchcreek Township entered into a joint

municipal police agreement whereby Frenchcreek paid Polk to provide law enforcement services. Those services, which had been provided from 2006 through the time of the stop at issue in this case in 2017, included Polk Borough police patrolling within Frenchcreek to enforce the Vehicle and Crimes Codes. *See* Joint Municipal Agreement, 4/13/06, at ¶ 2(a)(1), (2).

The version of the ICA in effect at the time of the agreement required adoption of such an agreement by ordinance. Specifically, that version provided in pertinent part as follows: "A local government may enter into intergovernmental cooperation with or delegate any functions, powers or responsibilities to another governmental unit or local government upon the passage of an ordinance by its governing body. If mandated by initiative and referendum in the area affected, the local government shall adopt such an ordinance." 53 Pa.C.S. § 2305 (effective 1996-2020).[1] Polk Borough properly passed an ordinance adopting the 2006 agreement, but Frenchcreek Township only entered a resolution to adopt the agreement.

With this background, we turn to the disputed stop. On August 11, 2017, Chief Sharp was traveling on Georgetown Road in Frenchcreek Township and observed Appellee's vehicle driving east in the westbound lane for approximately one-half mile. Chief Sharp conducted a traffic stop shortly before 9:00 p.m., and immediately recognized Appellee, his longtime friend, as the driver. The two had, among other things, worked together on the

---

[1] The legislature subsequently amended the ICA to expressly permit adoption of such an agreement by ordinance **or** resolution. *See* 53 Pa.C.S. § 2305(a).

campaign for Venango County Court of Common Pleas President Judge Oliver Lobaugh. Chief Sharp observed a martini glass with two olives in the center console. When asked about the glass, Appellee "picked it up" and "threw it onto the . . . floor on the side[.]" N.T. Suppression, 8/27/21, at 48. As Chief Sharp and Appellee began to converse, Appellee stated that "Ollie's not gonna like this." *Id*. Chief Sharp replied, "Let's not go there[,]" but Appellee continued to say "Ollie's not gonna like this" and "[y]ou and I are friends." *Id*. Based on the foregoing, Chief Sharp radioed for another officer to take over the traffic stop.

Sergeant Alan Heller, also of the Polk Borough Police Department, arrived on scene to relieve Chief Sharp.[2] After independently determining that Appellee exhibited signs of driving under the influence of alcohol ("DUI"), Sergeant Heller inquired about conducting field sobriety tests, but Appellee indicated he was unable to perform the tests. Therefore, Sergeant Heller transported Appellee for a blood draw to determine his blood alcohol content level. Since Appellee agreed to the blood draw, the sergeant did not inform him of the consequences of refusing to comply. The blood draw confirmed his blood alcohol content level as 0.16%. Based on the foregoing, Sergeant Heller decided to charge Appellee with DUI.

_____

[2] At the time of the hearing, Sergeant Heller had retired from Polk Borough and had become the chief of police elsewhere. *See* N.T. Suppression, 8/27/21, at 21-22. For ease of reference, we will refer to him within this opinion using his Polk Borough title.

Appellee, proceeding *pro se*, filed a suppression motion, which the court denied, and was convicted following a jury trial. On direct appeal, this Court vacated his judgment of sentence because he had not properly waived his right to counsel prior to his suppression hearing. ***See Commonwealth v. Eakin***, 242 A.3d 387, 2020 WL 6392480 (Pa.Super. 2020) (non-precedential decision). Therefore, we remanded the matter back to the trial court for a new suppression hearing where Appellee could either proceed with counsel or validly waive his right to counsel and proceed *pro se*. After electing to proceed *pro se*, Appellee filed another motion to suppress the results of his blood draw and the evidence obtained during the traffic stop. It is the result of this second suppression motion that is the subject of this appeal.

Of relevance, Appellee challenged the validity of the extra-jurisdictional traffic stop by Polk Borough police in Frenchcreek Township. Since the version of the ICA in effect at the time of the stop required adoption of a joint municipal agreement by ordinance, and Frenchcreek had only entered a resolution, Appellee argued that the evidence from the stop should be suppressed because the Polk Borough officers were not acting pursuant to an ICA-compliant joint agreement. Similarly, he contended that while the MPJA provides six exceptions for extra-judicial police conduct, ***see*** 42 Pa.C.S. § 8953(a), none of them applied. ***See*** Omnibus Pretrial Motion, 4/23/21, at ¶¶ 16-21. Thus, he averred that the officers lacked the authority to stop him and that the evidence obtained during the traffic stop should be suppressed.

Noting that Polk Borough police had been providing policing services to Frenchcreek Township since 2006, and that "Frenchcreek clearly intended to permit Polk Borough Police Department to perform law enforcement duties within Frenchcreek[,]" the Commonwealth insisted that the legislative purposes behind the MPJA were met in this case and suppression was therefore unwarranted. **See** Commonwealth's Answer, 6/3/21, at ¶¶ 11-18.

The court held a suppression hearing on August 27, 2021, and heard from Sergeant Heller and Chief Sharp. The parties agreed to the admission of the 2006 Joint Municipal Agreement, the 2018 Joint Municipal Agreement, the 2018 ordinance from Polk Borough, and emails between the two jurisdictions regarding the agreement to provide police services. In summarizing the import of those documents, the parties stipulated "that the 2006 Joint Municipal Agreement was amended [after the traffic stop at issue] and fixed to cure legal deficiencies[.]" N.T. Suppression, 8/27/21, at 59-60. Those "legal deficiencies" form the crux of this appeal.

At the conclusion of the suppression hearing, the Commonwealth argued that suppression was not an appropriate remedy because, despite the improper procedure to enforce the 2006 agreement, the local governments had been operating pursuant to that agreement for over ten years. **Id**. at 71-72, 77. Appellee, meanwhile, contended that the agreement was a legal nullity because it did not comply with the ICA. **Id**. at 73. He relied upon **Commonwealth v. Hlubin**, 208 A.3d 1032 (Pa. 2019), wherein the High Court considered the intrusiveness of a sobriety checkpoint involving

cooperation among multiple police jurisdictions, and implored the court to grant his suppression motion.

After taking the matter under advisement, the trial court granted Appellee's motion to suppress the evidence resulting from the traffic stop.[3] The Commonwealth filed a motion for reconsideration, noting, *inter alia*, that the legislature had, in direct response to **Hlubin**, amended § 8953(a)(3), one of the MPJA exceptions, because it disagreed with the Supreme Court's interpretation. **See** Motion for Reconsideration, 9/9/21, at unnumbered 1-2. The trial court denied the Commonwealth's motion, finding that § 8953(a)(3) did not apply, and that because an ordinance was not passed, Chief Sharp "lacked authority to stop [Appellee]" in Frenchcreek Township. Order, 9/14/21, at 2-3.

This appeal followed, wherein the Commonwealth certified that the suppression order substantially handicapped the prosecution of Appellee in this case. The Commonwealth complied with the court's order to file a Pa.R.A.P. 1925(b) statement. In lieu of a Rule 1925(a) opinion, the trial court directed us to its September 14, 2021 order. On appeal, the Commonwealth sets forth three issues for our consideration:

> 1. Whether the trial court erred in granting Appellee's motion to suppress by relying only on **Hlubin**, where **Hlubin** involved a police sergeant who conducted a stop and arrest in a prearranged sobriety checkpoint located outside of his primary jurisdiction.

---

[3] The court denied Appellee's challenge to the blood draw because it determined that he had validly consented to it. **See** Order of Court, 9/8/21, at 2-3. That portion of the suppression motion is not before us.

2. Whether the trial court erred in granting Appellee's motion to suppress, as our learned Superior Court has consistently found that suppression of evidence is not an appropriate remedy for a technical violation of the [MPJA].

3. Whether the trial court erred in granting [Appellee]'s motion to suppress, due to the Pennsylvania legislature amending [§] 8953 of the [MPJA] with the "explicit intent to reverse the Supreme Court's interpretation of the MPJA in **Hlubin**."

Commonwealth's brief at 4 (cleaned up).

In essence, the Commonwealth seeks reversal of the trial court's conclusion that suppression was an appropriate remedy for the ICA and MPJA violations. A panel of this Court considered these issues and filed a memorandum decision affirming the trial court's order.[4] The Commonwealth sought reargument before this Court *en banc*, which we granted. As a result, we withdrew our prior panel writings, permitted substituted briefing, and entertained oral argument.[5] The matter is now ripe for our consideration.

We begin with our well-settled standard of review. "When reviewing an order granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate." **Commonwealth v. Henry**, 943 A.2d 967, 969 (Pa.Super. 2008) (cleaned up). In the case *sub judice*, the facts are uncontroverted. Rather, this case hinges on the trial court's application of the law to those facts. In

---

[4] The author of this opinion sat on that three-judge panel and submitted a dissenting memorandum.

[5] We note that Appellee retained private counsel after we granted reargument.

- 7 -

that regard, our standard of review is *de novo* and "[o]ur scope of review over the suppression court's legal conclusions . . . is plenary." ***Id***. (citations omitted).

There is no dispute that the 2006 Joint Municipal Agreement was not properly enacted by an ordinance in both municipalities, as was required by the ICA at that time. Therefore, Chief Sharp's conduct in Frenchcreek Township was not authorized by the ICA, and he was thus acting outside his primary jurisdiction when he stopped Appellee. As noted, the MPJA provides exceptions for when an officer may perform police services outside the officer's primary jurisdiction. The Commonwealth conceded in its initial brief to this Court that the MPJA had been violated, and it is evident that none of the exceptions apply. ***See*** Commonwealth's brief at 15-16. Accordingly, the only question before this Court is whether suppression was an appropriate remedy for the stop, which was conducted in violation of the ICA and MPJA.

Suppression may be deemed an appropriate remedy "depending upon all of the circumstances of the case including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the Act, and the prejudice to the accused." ***Commonwealth v. O'Shea***, 567 A.2d 1023, 1030 (Pa. 1989) (citations omitted). Our Supreme Court approved of this "case-by-case approach[,]" first set forth in a Superior Court case, "to the determination of the appropriateness of exclusion of evidence allegedly

obtained in violation of the [MPJA]."[6]  *Id*.  Such an approach permits "this Commonwealth's courts to tailor a remedy in situations where police intentionally have overstepped their boundaries while still affording our courts the flexibility to deny suppression when police have acted to uphold the rule of law in good faith but are in technical violation of the MPJA." *Commonwealth v. Hobel*, 275 A.3d 1049, 1058 (Pa.Super. 2022) (cleaned up).

In considering the intrusiveness of Chief Sharp's actions, we find guidance from *Hlubin*.  Rather than considering the intrusiveness of a DUI checkpoint for an unimpaired driver, the High Court concluded that it "must

---

[6] The continued application of the *O'Shea* test was called into doubt by the plurality decision of our Supreme Court in *Commonwealth v. Hlubin*, 208 A.3d 1032 (Pa. 2019).  As explained by this Court:

> In *Commonwealth v. Hlubin*, 208 A.3d 1032 (Pa. 2019) (plurality), our Supreme Court addressed the continued validity of the *O'Shea* test.  Three justices were unwilling to condone its continued application for avoiding suppression of MPJA violations. *Id*. at 1049-51 (Opinion of the Court) (Donohue, J., joined by Todd and Wecht, JJ).  In contrast, three justices would have declined addressing the continued validity of the test because it was not raised.  *Id*. at 1052-53 (Saylor, C.J., concurring and dissenting, joined by Baer and Dougherty, JJ).  Finally, Justice Mundy supported the continued application of the three-factor test. *Id*. at 1057 (Mundy, J., dissenting). Thus, after *Hlubin*, the *O'Shea* test remains good law.

*Commonwealth v. Hobel*, 275 A.3d 1049, 1058 n.5 (Pa.Super. 2022) (cleaned up).  The High Court has not since revisited the *O'Shea* test. Accordingly, like the panel in *Hobel*, we continue to apply it to the matter before us.

instead measure the level of intrusion of a stop that results in an arrest, since only in this circumstance does the issue of possible suppression of evidence arise." *Id*. at 1048. In **Hlubin**, the officer initially questioned Hlubin for thirty to forty-five seconds and then, based upon that interaction, "removed Hlubin from her vehicle and took her to a testing area, where she was subjected to field sobriety testing, blood testing and arrest." *Id*. Our High Court determined that such an interaction "resulted in a high level of intrusiveness[.]" *Id*.

Likewise, we consider the entirety of the encounter from when Chief Sharp stopped Appellee, to when Appellee was arrested by Sergeant Heller, in order to determine the level of intrusiveness. As detailed *supra*, Chief Sharp conducted a stop after observing a traffic violation. Upon realizing that Appellee, a friend of Chief Sharp, was the driver, and observing a martini glass in the vehicle, Chief Sharp called for another officer to continue the traffic stop and investigation. That officer arrived and ultimately transported Appellee to a hospital for blood testing and arrest based upon suspicion of DUI. As in **Hlubin**, we conclude that this interaction involved a high level of intrusiveness and thus favors suppression.

Next, we consider "the extent of deviation from the letter and spirit of the [MPJA.]" **O'Shea**, 567 A.2d 1030 (cleaned up). The MPJA endeavors "to promote public safety while maintaining police accountability to local authority; it is not intended to erect impenetrable jurisdictional walls

- 10 -

benefiting only criminals hidden in their shadows." ***Commonwealth v. Lehman***, 870 A.2d 818, 820 (Pa. 2005) (cleaned up). Presently, we observe that Frenchcreek Township had no police force of its own. Thus, through the 2006 Joint Municipal Agreement, Frenchcreek Township purported to grant Polk Borough police the authority to enforce the laws of this Commonwealth within Frenchcreek. It is evident from the record that Polk Borough had been operating for over ten years as if it had authority to patrol in Frenchcreek Township pursuant to this agreement.

Within this framework, Chief Sharp observed Appellee driving his vehicle for one-half of a mile in the wrong direction on a public roadway. It is beyond peradventure that Appellee's driving presented "an immediate clear and present danger" to other vehicles and pedestrians on the roadway. ***See*** 42 Pa.C.S. § 8953(a)(5); ***Hobel***, 275 A.3d at 1062-63 (concluding that Hobel's driving presented "an immediate clear and present danger" when he swerved back and forth across the road into the oncoming traffic lane (citation omitted)). Furthermore, but for Frenchcreek Township's misguided decision to adopt the agreement by resolution instead of ordinance, Chief Sharp's conduct would have been authorized by the ICA and the MPJA. Under these circumstances, we hold that Chief Sharp's actions conformed to the spirit of the MPJA and did not deviate far from its letter. Therefore, consideration of this factor weighs against suppression.

Finally, we assess the prejudice to Appellee. This factor requires us to consider "whether the search would not have otherwise occurred or would not have been as intrusive." *Hlubin*, 208 A.3d at 1048 (cleaned up). Unquestionably, any officer observing Appellee driving on the wrong side of the road for a half mile would have pulled him over. Indeed, Appellee's attorney at oral argument conceded that any police officer who observed this conduct, including Chief Sharp, absolutely should have stopped Appellee.

Given the facts of this case, we have no difficulty determining that any officer conducting the stop would have followed the same, standard protocols for processing a suspected DUI, including stopping the vehicle, asking Appellee to perform field sobriety tests, transporting him for a blood draw if he consented to comply with that request, and arresting him for DUI. Accordingly, we cannot conclude that Appellee was prejudiced when he was pulled over by a Polk Borough police officer in Frenchcreek Township. Thus, the third factor also militates against suppression.

We note that our Supreme Court has held that "[t]he 'official duties' of a police officer at times extend outside the home jurisdiction's political boundaries, and appropriate responses to exigencies must be allowed, as the statute acknowledges. Authorizing expedient but limited responses is only common sense; they save lives and property without infringement on anyone's rights." *Lehman*, 870 A.2d at 821. In *Lehman*, Officer Robert Wagner was notified of an incapacitated driver slumped over in his vehicle in

the next jurisdiction. He immediately proceeded there to check on the appellant's well-being and, upon concluding that the appellant was not having a medical emergency but was instead likely intoxicated, performed a field sobriety test and summoned the state police since the jurisdiction where the appellant had been stopped lacked a police force. In finding that one of the exceptions to the MPJA applied, our Supreme Court held:

> [S]ection 8953(a)(5) of the MPJA authorizes an extrajurisdictional detention where the detaining officer is on-duty, outside his or her jurisdiction for a routine or customary reason including responding to an exigent circumstance, develops probable cause to believe an offense has been committed, and limits out-of-jurisdiction activities to maintaining the *status quo,* including detaining the suspect, until officers from the appropriate jurisdiction arrive.

*Id*. Further, the High Court observed:

> Officer Wagner was not engaged in an extrajurisdictional fishing expedition nor an attempt to expand his sphere of power. Had appellant in fact needed assistance, Officer Wagner was in the best position to provide it. Had appellant had a heart attack rather than been drunk, he would urge us to permit Officer Wagner to help him. Allowing officers to do their duty most effectively and beneficially to the public will sometimes put them in a position to see crimes and find drunken drivers—such would be a poor reason to limit their ability to provide the full measure of service to the public that is possible.

*Id*.

Here, it was not established that the Polk Borough police officers had a particular routine in Frenchcreek Township related to their Polk Borough responsibilities, but rather that they operated under the belief that they had jurisdiction in Frenchcreek Township based upon the improperly adopted 2006 agreement. Thus, as noted, the exception set forth at § 8953(a)(5) does not

apply. Nonetheless, we find **Lehman**'s reasoning instructive in considering the practical realities of policing when confronted with an individual who may be in medical distress, as in **Lehman**, or posing an extreme danger to themselves and others by their conduct, as Appellee herein, and whether suppression is an appropriate remedy for a technical violation of the MPJA where the police are "not engaged in an extrajurisdictional fishing expedition nor an attempt to expand [their] sphere of power." **Id**.

In sum, we find that the case *sub judice* is a textbook example of Chief Sharp acting "to uphold the rule of law in good faith [while] in technical violation of the MPJA." **See Hobel**, 275 A.3d at 1058 (cleaned up). Accordingly, we hold that "suppression would not be an appropriate remedy under the MPJA [in this case, as] the legislative intent of [the MPJA] is to advance public safety and not shield criminal behavior." **Id**. at 1064 (citation omitted). We reverse the order granting Appellee's suppression motion and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judges Dubow, Nichols, Murray, King, and Beck join this Opinion.

Judge Sullivan files a Dissenting Opinion in which President Judge Lazarus and Judge McLaughlin join.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 9/25/2024